IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| RAKESH BEKKAM, | * |
| Plaintiff, | * |
| v. | *   Civil Action No. GLR-25-3468 |
| U.S. DEPARTMENT OF HOMELAND SECURITY, | * |
| | * |
| Defendant. | |

\*\*\*

**<u>MEMORANDUM OPINION</u>**

THIS MATTER is before the Court on Defendant United States Department of Homeland Security's ("DHS") Motion to Dismiss (ECF No. 21). The Motion is ripe for disposition, and no hearing is necessary. <u>See</u> Local Rule 105.6 (D.Md. 2025). For the reasons set forth below, the Court will grant the Motion.

## I.   BACKGROUND

### A.   <u>Statutory and Regulatory Background</u>

This case concerns the H-1B visa petition process. Under 8 U.S.C. § 1184 and its accompanying regulations, an employer in the United States who agrees to hire a noncitizen to fill a "specialty occupation" may file a petition for an H-1B visa on the noncitizen's behalf. <u>See</u> 8 U.S.C. §§ 1101(a)(15)(H)(i)(B), 1184(c)(1). Noncitizens cannot apply for H-1B visas directly. <u>See</u> <u>id.</u> § 1184(c)(1). In filing the petition, the employer must show that (1) the job they wish to fill requires a highly specialized body of knowledge and a bachelor's degree or higher in a specific specialty, and (2) the prospective employee has the requisite degree and knowledge. <u>See</u> <u>id.</u> § 1184(i)(1).

The United States Citizenship and Immigration Services ("USCIS"), an agency that falls under DHS, (see Compl. ¶ 2, ECF No. 1), considers a limited number of H-1B visas each year, with a total "cap" of 85,000 visas per year (65,000 for each fiscal year plus 20,000 for individuals who have earned a master's degree or higher from a U.S. institution), see 8 U.S.C. §§ 1184(g)(1)(A)(vii), (5)(C). Because the demand for H-1B visas often exceeds the statutory cap, DHS regulations provide for the administration of the H-1B cap selection process, also known as the H-1B visa "lottery." See 8 C.F.R. § 214.2(h)(8)(iii). The employer-petitioner must register for the H-1B lottery, get randomly selected, and receive a "cap number" for the employee-beneficiary. See id. § 214.2(h)(8)(iii)(A)(1). Once the employee has a cap number, the employer can submit an H-1B visa petition on behalf of the employee. See id. The petition must adhere to the requirements listed in 8 C.F.R. § 214.2(h)(4)(iii)(B). Additionally, since the start of the fiscal year 2023, USCIS's website contains an anti-collusion attestation that requires petitioners to affirm that they did not collude with other petitioners to increase a beneficiary's chances of receiving an H-1B visa:

> When you submit your registration(s), you must attest, under penalty of perjury, that all of the information contained in the submission is complete, true, and correct. Beginning in FY 2023, the attestation that is required before submission indicates, "I further certify that this registration (or these registrations) reflects a legitimate job offer and that I, or the organization on whose behalf this registration (or these registrations) is being submitted, have not worked with, or agreed to work with, another registrant, petitioner, agent, or other individual or entity to submit a registration to unfairly

increase chances of selection for the beneficiary or beneficiaries in this submission."[1]

USCIS will notify the employer-petitioner when it approves or denies the petition and, if approved, whether it revokes or intends to revoke the petition. See id. §§ 214.2(h)(9)(i), (h)(10)(ii), (h)(11). USCIS may revoke an H-1B petition if, among other reasons, it determines that the petition is fraudulent or misrepresents material facts. See id. § 214.2(h)(11)(iii)(A)(2). In such cases, USCIS will send a notice of intent to revoke to the employer-petitioner, detailing the grounds for revocation and the time in which the employer-petitioner may submit a rebuttal. See id. § 214.2(h)(11)(iii)(B). If USCIS revokes an H-1B petition due to fraud or willful misrepresentation, then the employee-beneficiary will lose their visa and cap number. See 8 U.S.C. § 1184(g)(3). An employer would then have to go through the H-1B lottery process again in a new fiscal year and, if selected, the employee would receive a new cap number. See id.

---

[1] USCIS, Archived H-1B Electronic Registration Process, https://web.archive.org/web/20230306061641/https:/www.uscis.gov/working-in-the-united-states/temporary-workers/h-1b-specialty-occupations-and-fashion-models/h-1b-electronic-registration-process, (updated Feb. 16, 2023). This is the language that was published on USCIS's website at the time Plaintiff Rakesh Bekkam's petition was filed, (see Def.'s Mem. L. Supp. Mot. Dismiss or, in alt., Mot. Summ. J. ["Mot."] at 3, ECF No. 21-1). Currently, USCIS's website contains a similar attestation rule. See USCIS, H-1B Electronic Registration Process, https://www.uscis.gov/working-in-the-united-states/temporary-workers/h-1b-specialty-occupations/h-1b-electronic-registration-process, (updated Mar. 31, 2026).

**B.    Factual Background[2]**

Plaintiff Rakesh Bekkam is a citizen and national of India. (Compl. ¶ 1). Bekkam alleges that Data Sys IT Inc. ("Data Sys") filed an H-1B visa petition on his behalf after USCIS had selected Data Sys's registration of Bekkam in the H-1B lottery. (Id. ¶ 120). USCIS approved Data Sys's petition on August 30, 2022, and authorized Bekkam's employment. (Id. ¶ 121). Then, on July 12, 2023, Level Up Automation Inc. filed a transfer petition on Bekkam's behalf. (Id. ¶ 123). Bekkam states that he "never communicated with USCIS during the H-1B petition process, and he could not do so by rule." (Id. ¶ 122).

On February 2, 2025, Bekkam traveled to India to visit family. (Id. ¶ 124). Bekkam had to obtain a new visa stamp on his passport to return to the U.S., so he dropped off his passport for stamping at the Visa Application Center in Chennai on February 5, 2025. (Id. ¶ 125). Two days later, Bekkam received a notification from the U.S. Consulate that his visa was refused. (Id. ¶ 126). On February 12, 2025, Bekkam received his passport and a request for an in-person interview. (Id. ¶ 127). He attended the interview on February 18, 2025, where "he was questioned about his previous and current employment and was told that DHS-USCIS determined he was inadmissible for providing false or misleading statement[s]." (Id. ¶ 128). He learned that his visa was refused under 8 U.S.C. § 1182(a)(6)(C)(i). (Id.). Bekkam attempted to challenge the decision and correct his records, but his requests were denied. (Id. ¶ 129). Bekkam later learned that USCIS revoked his H-1B cap number. (Id. ¶ 131).

---

[2] Unless otherwise noted, the Court takes the following facts from the Complaint (ECF No. 1) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

## C.    Procedural Background

On June 27, 2025, Bekkam filed a two-count Complaint against DHS under the Administrative Procedure Act ("APA"). (Id. ¶¶ 134–79). In Count I, he claims that DHS unlawfully determined that he had violated § 1182(a)(6)(C)(i)'s prohibition on providing false or misleading statements even though he had provided no statements during the H-1B petitioning process and received no notice or opportunity to be heard regarding any such statements. (Id. ¶¶ 134–65). In Count II, Bekkam claims that DHS exceeded its statutory authority when it revoked his H-1B cap number due to allegedly fraudulent or misleading statements made by his employer during the petitioning process. (Id. ¶¶ 166–79). DHS filed a Motion to Dismiss on January 14, 2026. (ECF No. 21). Bekkam filed an Opposition on January 28, 2026, (ECF No. 22), and DHS filed a Reply on February 4, 2026, (ECF No. 23).

## II.    DISCUSSION

## A.    Standards of Review

### 1.    Conversion

DHS's Motion, styled as a motion to dismiss or, alternatively, for summary judgment, implicates the Court's discretion to determine which standard applies. Roswell v. Mayor & City Council of Balt., 671 F.Supp.3d 607, 623 (D.Md. 2023), aff'd, No. 23-1567, 2023 WL 8728503 (4th Cir. Dec. 19, 2023). The Court may treat the Motion solely as one to dismiss, in which case the Court may consider only the Complaint and any attached documents that are "integral to the [C]omplaint." Id. (quoting Sec'y of State for Def. v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007)); see also Netro v.

Greater Balt. Med. Ctr. Inc., No. GLR-16-3769, 2017 WL 5635446, at *1 (D.Md. Apr. 13, 2017) (citing Fed.R.Civ.P. 12(d)), aff'd, 891 F.3d 522 (4th Cir. 2018). Because the Court can resolve the Motion without considering DHS's extra-pleading material, the Court will construe the Motion as a motion to dismiss.

> **2.      Rule 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) requires a plaintiff to establish the Court's subject-matter jurisdiction by showing the existence of either a federal question under 28 U.S.C. § 1331 or diversity jurisdiction under 28 U.S.C. § 1332. A plaintiff may establish federal question jurisdiction by asserting a claim that arises from a federal statute or from the U.S. Constitution. 28 U.S.C. § 1331. To show that the claim arises on one of these bases, the federal question must appear "on the face of the plaintiff's properly pleaded complaint." AES Sparrows Point LNG, LLC v. Smith, 470 F.Supp.2d 586, 592 (D.Md. 2007) (quoting Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987)). When a party challenges subject-matter jurisdiction, however, the Court may consider "evidence outside the pleadings" to resolve the challenge. Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991) (citation omitted).

A defendant challenging a complaint under Rule 12(b)(1) may advance a "facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting 'that the jurisdictional allegations of the complaint [are] not true.'" Hasley v. Ward Mfg., LLC, No. RDB-13-1607, 2014 WL 3368050, at *1 (D.Md. July 8, 2014) (alteration in original) (quoting Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009)). When a defendant raises a facial challenge, as

DHS does in this case, (see Def.'s Mem. L. Supp. Mot. Dismiss or, in alt., Mot. Summ. J. ["Mot."] at 8–11, ECF No. 21-1),[3] the Court affords the plaintiff "the same procedural protection as he would receive under a Rule 12(b)(6) consideration," Kerns, 585 F.3d at 192 (quoting Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). As such, the Court takes the facts alleged in the complaint as true and denies the motion if the complaint alleges sufficient facts to invoke subject-matter jurisdiction. Id.

### 3.      Rule 12(b)(6)

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am.,

---

[3] Unless otherwise noted, citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Files ("CM/ECF") system.

7

N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, accept the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters of Norfolk v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

**B.    Analysis**

DHS argues that both Counts of Bekkam's Complaint should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). (Mot. at 8–12). Bekkam concedes in his Opposition that Count I is moot because DHS's records system does not show a finding of fraud against Bekkam. (Pl.'s Mem. L. Opp'n Def.'s Mot. Dismiss ["Opp'n"] at 2, ECF No. 22). The sole claim before the Court, then, is whether DHS exceeded its statutory authority when it revoked Bekkam's H-1B cap number. (Compl. ¶¶ 166–79). The Court will address each of DHS's grounds for dismissal in turn.

**1.    Subject Matter Jurisdiction**

DHS argues first that Count II should be dismissed for lack of subject matter jurisdiction because Bekkam does not have standing. (Mot. at 9). Specifically, DHS asserts

8

that Bekkam "cannot trace his purported injury to USCIS" and, even if he could, "his purported injury is not redressable." (Id. at 9, 11). The Court disagrees.

To satisfy the standing requirement under Article III of the United States Constitution, a plaintiff must establish that (1) they suffered an "injury in fact"; (2) the injury is fairly traceable to the actions of the defendant; and (3) it is "likely" that the injury will be "redressed by a favorable decision." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992). The Supreme Court characterizes these standing requirements, particularly traceability, as "relatively modest" at the motion to dismiss stage. Lowy v. Daniel Def., LLC, 167 F.4th 175, 194 (4th Cir. 2026) (quoting Bennett v. Spear, 520 U.S. 154, 171 (1997)).

The Parties in this case dispute the satisfaction of the second and third elements, traceability and redressability. (See Mot. at 9–12; Opp'n at 3–4). To demonstrate traceability, the plaintiff must show a "causal connection between the injury and the conduct complained of." Lujan, 504 U.S. at 560. The injury cannot be "th[e] result [of] the independent action of some third party not before the court." Id. (alterations in original) (quoting Simon v. E. Ky. Welfare Rts. Org., 426 U.S. 26, 41–42 (1976)). As to redressability, the court must have "the power to grant the plaintiff's requested relief, and . . . such relief [must] remedy the plaintiff's injury." Sheppheard v. Morrisey, 143 F.4th 232, 243 (4th Cir. 2025). "An injury is not redressable if the court is 'powerless to provide the very relief' the plaintiff requests." Id. (quoting K.C. ex rel. Afr. H. v. Shipman, 716 F.3d 107, 116–17 (4th Cir. 2013)).

9

Here, DHS contends that the "root" of Bekkam's claim under Count II is Data Sys's alleged decision to "unfairly increase[] its chances of selection for [Bekkam] in the H-1B cap lottery." (Mot. at 10). Thus, according to DHS, Bekkam's injury (the loss of his cap number) is "the result of the independent action of some third party not before the court" and, consequently, is not traceable to DHS. (Id. (quoting Atabekow v. USCIS, 4:23CV3146, 2024 WL 657772, at *12 (D.Neb. Feb. 14, 2024))).

The alleged unlawful conduct for which Bekkam seeks relief, however, is not Data Sys's alleged collusion with other employers in the H-1B petitioning process but rather DHS's alleged misinterpretation and application of 8 U.S.C. § 1184(g)(3). (See Compl. ¶¶ 171–75, 179; Opp'n at 3). According to Bekkam, DHS incorrectly interprets § 1184(g)(3) as allowing the revocation of a noncitizen's H-1B cap number due to the employer-petitioner's fraud, even if the noncitizen did not commit fraud. (See Compl. ¶¶ 171–75). Whether Bekkam's counter interpretation that § 1184(g)(3) applies only when the noncitizen commits fraud is correct goes to the merits of his claim, and his "standing does not depend on the merits of [his] statutory argument." Radhakrishnan v. U.S. Dep't of Homeland Sec., No. 2:24-CV-00444, 2025 WL 2652481, at *5, 7–8 (D.Utah Sep. 15, 2025) (finding that plaintiff had standing to challenge DHS's interpretation of § 1184(g)(3), but rejecting his counter interpretation of § 1184(g)(3) on the merits), appeal dismissed sub nom., Tripathi v. U.S. Dep't of Homeland Sec., No. 25-4151, 2026 WL 1335374 (10th Cir. Jan. 21, 2026). Thus, regardless of the merits of Bekkam's position, "USCIS's revocation of [Bekkam's] cap number satisfies [the traceability] requirement because [Bekkam] contends that the agency's misinterpretation of 8 U.S.C. § 1184(g)(3)

is the reason it improperly revoked his cap number." Nalwade v. U.S. Dep't of Homeland Sec., No. 24-CV-3463 (DLF), 2026 WL 850836, at *4 (D.D.C. Mar. 27, 2026) (quoting Sharma v. U.S. Dep't of Homeland Sec., No. 24-7205, 2025 WL 3678429, at *1 (9th Cir. Dec. 18, 2025)); see also Radhakrishnan, 2025 WL 2652481, at *4 (finding revocation of plaintiff's H-1B cap number and status traceable to DHS's interpretation of § 1184(g)(3)).

Regarding redressability, DHS argues that Bekkam's claim is not redressable because Data Sys "did not provide sufficient evidence to overcome the fraud allegation, [so] providing [Bekkam] with the opportunity to respond would be unavailing[,] as beneficiaries are not party of the petitioning process in the H-1B context." (Mot. at 11). Bekkam, however, seeks more than notice and an opportunity to be heard regarding the fraud allegations. (See Compl. at 30). He seeks a declaration that "DHS's authority to revoke a cap number for fraud is limited to instances of knowingly false statements made by the alien" and asks this Court to "reverse the agency's decision because it has acted in excess of the authority Congress gave it to revoke assigned cap numbers." (Id.; see also Opp'n at 3 (arguing that his claim is redressable because the APA allows courts to set aside unlawful agency actions)). If the Court agrees with Bekkam's interpretation of § 1184(g)(3) and his argument that DHS exceeded its statutory authority in revoking his H-1B cap number, the Court could set aside DHS's decision as unlawful under the APA. See Nalwade, 2026 WL 850836, at *4; Radhakrishnan, 2025 WL 2652481, at *5 ("Plaintiffs allege DHS misapplied the law and, under the APA, a court may set aside an agency's action if contrary to law."); Sharma, 2025 WL 3678429, at *1. Bekkam's injury, therefore, is "redressable by a favorable decision." Nalwade, 2026 WL 850836, at *4.

11

At bottom, Bekkam has satisfied the three standing requirements. Accordingly, the Court will not dismiss his claim for lack of subject matter jurisdiction.

### 2.     Failure to State a Claim

As to the merits of Bekkam's claim, Bekkam asserts that "[t]he plain language of [§ 1884(g)(3)] authorizes revocation of H-1B cap numbers only in cases where the foreign national has committed fraud or misrepresentation." (Compl. ¶ 174). DHS argues that Bekkam's reading of § 1184(g)(3) is too narrow and that § 1184(g)(3) "does not say that a cap number can <u>only</u> be revoked because of the noncitizen's fraud or misinterpretation." (Mot. at 10 (quoting <u>Narambatla v. U.S. Dep't of Homeland Sec.</u>, 770 F.Supp.3d 1264, 1269 (W.D.Wash. 2025))). This Court, like several others, agrees with DHS's reading of the statute.

To start, the plain text of 8 U.S.C. § 1184(g)(3) does not support Bekkam's position:

> If an alien who was issued a visa or otherwise provided nonimmigrant status and counted against the numerical limitations of paragraph (1) is found to have been issued such visa or otherwise provided such status by fraud or willfully misrepresenting a material fact and such visa or nonimmigrant status is revoked, then one number shall be restored to the total number of aliens who may be issued visas or otherwise provided such status under the numerical limitations of paragraph (1) in the fiscal year in which the petition is revoked, regardless of the fiscal year in which the petition was approved.

8 U.S.C. § 1184(g)(3). "[N]owhere does [§ 1184(g)(3)] specify that a cap number can <u>only</u> be revoked through an individual's own fraud or misrepresentation." <u>Nalwade</u>, 2026 WL 850836, at *5 (quoting <u>Manney v. U.S. Dep't of Homeland Sec.</u>, 735 F.Supp.3d 590, 600 (E.D.Pa. 2024)); <u>see also</u> <u>Parcha v. Cuccinelli</u>, No. 4:20-CV-015-SDJ, 2020 WL 607103,

at *9 (E.D.Tex. Feb. 7, 2020) ("Under [§ 1184(g)(3)'s] plain language, revocation authority is broadly conditioned on a finding of fraud or willful misrepresentation. Nothing in the statutory text limits the scope of that authority to wrongful conduct committed by any particular party."). Rather, the text of § 1184(g)(3) "broadly conditions revocation authority on a finding of fraud or willful misrepresentation, without regard for who committed the wrongful acts." Radhakrishnan, 2025 WL 2652481, at *7. Thus, "Section 1184 cannot fairly be read as only applying to a foreign national's fraud or misrepresentation." Id.

The context and design of § 1184(g)(3) also undermines Bekkam's interpretation. The petitioning process under § 1184 "rests on the employer," as the employer is required to submit the petition on the employee-beneficiary's behalf. Id. "[I]t makes sense," then, "for § 1184(g)(3) to encompass fraud or willful misrepresentation by the employer, the foreign national, or both. The statute seems designed to broadly cover any fraud or misrepresentation in the H-1B process." Id.; see also Manney, 735 F.Supp.3d at 600–01 ("Plaintiff's interpretation would require USCIS to somehow uncouple cap numbers from their underlying visas, effectively creating a windfall opportunity to a cap number recipient where the agency later determines that the visa itself was obtained through an employer's fraud. Because H-1B visas are connected to specific employers, such a scheme is hardly intuitive and cannot be readily discerned from the statutory language. Rather, from a systemic perspective, it makes far more sense that individuals whose visas are revoked through their employers' fraud lose their cap numbers but remain free to seek new employment with new cap numbers.").

Finally, the fact that § 1184(g)(3) contains similar language as 8 U.S.C. § 1182(a)(6)(C)(i), a statute that renders inadmissible any noncitizen who "by fraud or willfully misrepresenting a material fact" seeks to obtain a visa, other documentation, admission into the U.S., or other benefit under the Immigration and Nationality Act, does not alter the Court's conclusion that USCIS's revocation authority under § 1184(g)(3) is not limited to the noncitizen misconduct. Despite their shared language, § 1182(a)(6)(C)(i) and § 1184(g)(3) have important "textual differences" that give the provisions different meanings. See Nalwade, 2026 WL 850836, at *6. Specifically, § 1182(a)(6)(C)(i) uses active voice, stating that "[a]ny alien who, by fraud or willfully misrepresenting a material fact, seeks to procure [a visa]" can be deemed inadmissible. 8 U.S.C. § 1182(a)(6)(C)(i); see Nalwade, 2026 WL 850836, at *6. "Section 1184(g)(3), by contrast, uses passive voice and does not specify an actor." Nalwade, 2026 WL 850836, at *6; see 8 U.S.C. § 1184(g)(3) (allowing cap number revocation "[i]f an alien who was issued a visa . . . is found to have been issued such visa or otherwise provided such status by fraud or willfully misrepresenting a material fact"). "These textual differences suggest that Congress used different language in the two provisions to mean different things." Nalwade, 2026 WL 850836, at *6; see also Radhakrishnan, 2025 WL 2652481, at *7 ("[I]f Congress intended § 1184(g)(3) to apply only to a foreign national's misconduct, it would have said so—like it did in § 1182(a)(6)(C)(i).").

Sections 1182(a)(6)(C)(i) and 1184(g)(3) also have different consequences for different situations:

14

> 8 U.S.C. § 1182(a)(6)(C)(i) renders a foreign national "inadmissible" if they personally engage in fraud or misrepresentation in the visa process. This is a drastic sanction that is not equivalent to the revoked cap number provided by § 1184(g)(3), because under that provision the foreign national is not barred but remains free to seek a new cap number. That substantial difference in outcome undermines Plaintiffs' position because it shows that Congress recognized a distinction between situations where an employee is culpable and where the employee is blameless.

Manney, 735 F.Supp.3d at 600. A noncitizen who is found to have committed fraud or a willful misrepresentation in violation of § 1182(a)(6)(C)(i) is deemed inadmissible and, as a result, "cannot apply for a visa or otherwise be admitted into the United States." Nalwade, 2026 WL 850836, at *6 (quoting Narambatla, 770 F.Supp.3d at 1269). Section 1184(g)(3), on the other hand, calls for a far less "drastic sanction" (i.e., loss of one's H-1B exempt visa and cap number) when a noncitizen is issued a visa by fraud or willful misrepresentations of material fact. Manney, 735 F.Supp.3d at 600. In the latter scenario, the noncitizen is not barred from admission into the U.S.; they still can "reenter the H-1B lottery and 'seek new employment' in the United States." Nalwade, 2026 WL 850836, at *6 (quoting Manney, 735 F.Supp.3d at 601); see also Narambatla, 770 F.Supp.3d at 1269 ("The considerable difference in the consequences" under §§ 1182(a)(6)(C)(i) and 1184(g)(3) "shows that Congress recognized a distinction between situations where an employee is culpable and where the employee is blameless." (quoting Manney, 735 F.Supp.3d at 600)).

Overall, the context, structure, and text of § 1184(g)(3) supports DHS's interpretation of the statute as applying either when the noncitizen commits fraud or when

the employer commits fraud. The Court therefore finds that Bekkam's interpretation of § 1184(g)(3) is incorrect and, consequently, that he fails to state a claim under § 706 of the APA.

### III.    CONCLUSION

For the foregoing reasons, the Court will grant DHS's Motion to Dismiss (ECF No. 21) and will dismiss Bekkam's Complaint (ECF No. 1). A separate Order follows.

Entered this 9th day of July, 2026.

_____/s/_____

George L. Russell, III
Chief United States District Judge
